Michael D. Pinsky, P.C.
Special Counsel for Debtor
211 Main Street, PO Box 148
Goshen, New York 10924-0148
Tel. (845) 294-5123
Mike Pinsky, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In Re:

                                 **CHAPTER 13**

ANN-MARIE WESTRIDGE,                    **CASE NO. 07-35257 (CGM)**

        Debtor.
-------------------------------------------------------X

### JOINT PRETRIAL ORDER FOR MOTION HOLDING RESPONDENTS LIABLE FOR A VIOLATION OF THE STAY AND AWARDING TO THE DEBTOR HER ATTORNEYS FEES, COSTS, DISBURSEMENTS AND PUNITIVE DAMAGES

The parties, having conferred among themselves with the Court, now therefore, the following statements, directions and agreements are docket as the pre-evidentiary hearing order herein:

**I.**     **Nature of the Case:**   This order pertains to the Motion of Ann-Marie Westridge (the "debtor") seeking to have this Court find that the conduct of STEPHEN FORD and KATHIE FORD (the "respondents") is in violation of the automatic stay provided for under 11 U.S.C. §362(a) and thus the debtor should be awarded her attorneys fees, costs, disbursements and punitive damages against the respondents pursuant to 11 U.S.C. §362(k).

**ISSUES:**

1.   Did the conduct of the respondent's at the 341 Meeting and thereafter, violate the automatic stay provided under 11 U.S.C. §362(a)?

2.   Should the debtor be awarded her attorneys fees, costs and disbursements of the instant Motion due to the violation under 11 U.S.C. §362(k)?

3.   Was the conduct engaged in by the respondents herein egregious entitling the debtor to an award of punitive damages against the respondent pursuant to 11 U .S.C. §362(k).

Debtor contends:     That the debtor is able to establish all of the elements required for this Court to find that the conduct of the respondents violated the automatic stay under 11 U.S.C. §362(a). Once this Court determines that the conduct engaged in by the respondents violated the automatic stay, the debtor is legally entitled to an award against the respondents for attorneys fees, costs and disbursements of this Motion. Additionally, the debtor is able to demonstrate that the conduct in this case is legally egregious entitling the debtor to an award of punitive damages against the respondents.

This matter is scheduled to be heard at a Status Conference before the Court on October 23, 2008 at 10:30 a.m.

Respondents contend:     That Kathie Ford is not a creditor and, therefore, not subject to the automatic stay provisions under Section 11 U.S.C. §362, ET AL. It is further contended that the conduct of the Fords did nnot constitute a violation of Section 11 U.S.C. §362, et al.

**II.     Relief Requested:**     The debtor seeks the entry of an order finding that the respondents are liable for a violation of the automatic stay under 11U.S.C. §362(a) and awarding to the debtor her attorneys fees, costs , disbursements and punitive damages, pursuant to 11 U.S.C. §362(k).

**III.     Undisputed Contentions of Fact:**

1.     On February 27, 2007, the debtor filed a Petition under Chapter 7 of the United States Bankruptcy Code.

2.  The debtor listed the respondent, STEVEN FORD, as an unsecured creditor on Schedule "F" of the debtor's petition in bankruptcy.  (See this Court's Docket).

3.  The debtor included the respondent on the Verification of Creditor Matrix which was filed with the Court on February 27, 2007.

2

4. A notice of the filing of such petition, signed by the Clerk of the Court, was served upon, among others, the respondent. (See this Court's Docket).

5. On March 29, 2008, the Chapter 7 Trustee conducted a 341 Examination at which time the respondents appeared to question the debtor.

6. On April 20, 2007, this Court entered an Order converting this case to a case under Chapter 13 of the United States Bankruptcy Code, and the debtor has continued in possession of her property.

7. The debtor's Chapter 13 Section 341 Meeting of Creditors was conducted on May 30, 2007, at which the respondents appeared. The debtor was accompanied by her sister.

8. On October 23, 2007, at approximately 7:30 p.m., the respondent, KATHIE FORD appeared at the debtor's residence, knocked on the door and engaged parties in the house in a discussion.

9. At this time, the debtor, the debtor's minor daughter and the creditor's brother, William Helgerman, were at home.

IV.    **Contention of Disputed Facts:**

A.     Debtors' Contention of Disputed Facts:

1. At the 341 Meeting of Creditors, the respondents were unusually rude and offensive. At the close of the meeting, the respondents followed the debtor outside and both verbally and physically assaulted the debtor.

2. STEVEN FORD physically grabbed the debtor demanding that she talk to him regarding paying back the alleged debt. In an effort to protect the debtor, the debtor's sister, who had attended the hearing with the debtor, was required to attempt to physically separate them. The commotion created was so great that it could be heard in the 341 Meeting room causing the debtor's attorney, ANDREA B. MALIN, ESQ. and several other parties attending the 341 Meetings to rush outside.

3. Upon witnessing the physical and verbal altercation, ANDREA B. MALIN warned

3

the respondents that their behavior was inappropriate and in violation of the law and directed them to leave immediately or she would obtain the marshals and summon the city police. At first the respondents refused to leave and then advised that they would leave but they would be waiting for the debtor in the parking lot. This threat caused grave concern to ANDREA B. MALIN so she advised her client and sister to go instantly to the 341 Meeting room and she went across the street to the United States Marshals and requested that they intervene in order to protect the debtor. The United States Marshals walked the debtor to her vehicle to assure her safety.

4. At all times pertinent hereto, Kathie Ford was acting as the agent of Stephen Ford.

5. On October 23, 2007, at approximately 7:30 p.m., KATHIE FORD appeared at the debtor's residence attempting to address the debtor in regard to the alleged debt. The debtor's friend answered the door at which time the debtor heard a grave commotion, to wit: screaming and yelling by KATHIE FORD regarding the debtor's failure to pay the debt and making threats against the debtor. Upon rushing to the door, the debtor realized it was KATHIE FORD and the debtor immediately demanded that she leave the property. KATHIE FORD refused to leave the property. At such time KATHIE FORD advised the debtor that she had been to Michael O'Leary's office and was advised that the debtor was not going to pay the debt allegedly due and owing to respondents. KATHIE FORD made many physical threats prior to finally leaving the property.

6. At this time, the debtor's minor daughter was home and is now afraid to stay alone at the home after school as she believes either respondent will return to the home to make good on their threats. The debtor has been forced to leave work early or make other arrangements to ensure that her daughter is not home alone after school, as she too fears for her physical safety.

7. Immediately after the incident occurred, the debtor contacted the New York State Troopers to report same.

8. Notwithstanding the respondents' actual knowledge of the filing of the debtor's petition and that continued efforts to collect their alleged debt were in violation of the automatic stay, the respondents willfully violated the stay by their outrageous behavior at the 341 Meeting of Creditors and again by going to the debtor's house and engaging in more egregious and outrageous behavior in an attempt to get the debtor to pay the money claimed to be owed to them.

9. Additionally, in an effort to thwart the debtor's attempts to reorganize and collect their debt, the respondents engaged in a systematic effort to continue litigation in the form of an Objection to Confirmation and Objection to Claim that they knew had no legal basis in an effort to prejudice the debtor.

10. The respondents attempt to do this is clear by the fact that the respondents continued to force the debtor to defend against the Objection to Confirmation and prosecute the Motion Objecting to Claim, counsel before the respondents withdrew the amended proof of claim and decided to discontinue their efforts with regard to the Objection to Confirmation. The respondents knew that they were going to withdraw both the amended proof of claim and the Objection to Confirmation long before same was withdrawn while well aware of the fact that the debtor was continuing to prepare to litigate the matters and incur substantial costs doing so.

11. This attempt to obtain collection of the debt may also be gleaned from the fact that at no time did the respondents' counsel submit papers to this Court in defense of its position that set forth law or facts sufficient to support their claims.

12.    The respondents engaged in intentional and willful conduct in that they continued to litigate the matters before the Court with knowledge that they were unable to legally prevail in an effort to cause the debtor severe financial and emotional distress in hopes to thwart the debtor's efforts to reorganize and thus provide the respondents with an opportunity to collect upon their debt.

13.    The respondents have failed and refused to recognize the mandate set forth in 11 U.S.C. §362.

14. It is clear from the facts as set forth herein that the respondents have knowingly violated the automatic stay and have wrongfully refused to discontinue such activities.

15. Due to the especially egregious and heinous conduct knowingly engaged in by the respondents, the debtor should be awarded punitive damages in the sum of $200,000.00.  Such an award is justified under the circumstances especially in light of the fact that the respondents continued to engage in this violent behavior without excuse or justification.

B.  Respondents Contention of Disputed Facts:

1. After the Court meeting on May 30, 2007, Kathie Ford wanted to speak to Ann-Marie Westridge outside the courthouse to tell her to tell her boyfriend, William Helgerman (Kathie's brother) the truth about what happened at that meeting since it is Kathie Ford's contention that at the previous meeting Ann-Marie Westridge lied to him about things that took place.

2. Respondent further contends that any conversation she had at that time and place were not with the debtor but with the debtor's sister. At no time did the respondents harass the debtor, threaten the debtor or in any way attempt to collect on any purported debt owed by the debtor. The respondents further contend that on October 23, 2007, Kathie Ford went to speak to her brother who was at the debtor's house. All conversations at that time and place took place in the front of the debtor's house and were between Kathie Ford and her brother and not between Kathy Ford and the debtor.

6

V. **Issues of Law:**

By Debtor:

1.   Did the conduct of the respondent's at the 341 Meeting and thereafter, violate the automatic stay provided under 11 U.S.C. §362(a)?

2.   Should the debtor be awarded her attorneys fees, costs and disbursements of the instant Motion due to the violation under 11 U.S.C. §362(k)?

3.   Was the conduct engaged in by the respondents herein egregious entitling the debtor to an award of punitive damages against the respondent pursuant to 11 U .S.C. §362(k).

By Respondents:

1.      If Kathie Ford is not a creditor of the debtor, can she be charged with a violation of 11 U.S.C. §362(a)?

2.      Was there, in fact, a violation of the automatic stay?

3.      If there was a violation of the automatic stay, was it deliberate and willful?

4.      Did the actions of the respondents constitute harassment of the debtor?

VI.   **SEPARATE TRIAL OF ISSUES:**  The parties maintain that there are no issues which should be tried separately.

VII.  **Related Motions:**

1.      Motion Objecting to Claim filed by the Debtor.

2.      Objection to Confirmation to Debtor's Plan filed by Respondents.

VIII. **Witnesses for the Debtor:**

A.      Witness 1: The debtor, ANN-MARIE WESTRIDGE

B.      Witness 2: ANDREA B. MALIN, ESQ.

C.       Witness 3: WILLIAM HELGERMAN

D.       Witness 4: SANDRA

7

**IX.** **Witnesses for Respondent:**

A. KATHIE FORD

B. STEPHEN FORD

C. WILLIAM HELGERMAN

The parties reserve the right to call as their witnesses any of the persons identified herein as witnesses for the debtor, the respondents and any other witnesses that may be necessary based on the direct testimony of the debtor, respondents or witnesses of the debtor or respondents.

**X.** **Experts:**

None.

**XI.** **Exhibits:**    The parties stipulate to the authenticity entered as evidence of the following exhibits:

A.    The debtor's exhibits are as follows:

Trial Exhibit:                                   Description

Trial Exhibit 1:     Chapter 13 Petition with Schedules
Trial Exhibit 2:     Motion Objecting to Claim and all Exhibits
Trial Exhibit 3:     Objection to Confirmation filed by Respondents
Trial Exhibit 4:     Debtor's Opposition to Objection to Confirmation and all Exhibits.
Trial Exhibit 5:     Time Records and Disbursements sheets for the firm of GENOVA & MALIN with regard to the time and expenses incurred in the filing and prosecution of this Motion.
Trial Exhibit 6:     Time Records and Disbursements sheets for MIKE PINSKY, ESQ. with regard to the time and expenses incurred in the filing and prosecution of this Motion.

B:    The Respondents proposed Exhibits are as follows:

Trial Exhibit:                                   Description

**XII.** **Requested Evidentiary Rulings:**

A.    By Debtor:

None.

B:    By Respondents:

    None.

**XIII.**  **<u>Trial Counsel</u>:**

A.    Trial Counsel for the Debtor:    Michael D. Pinsky, Esq.
    211 Main Street
    Box 148
    Goshen, NY 10924
    (845) 294-5123

B.    Trial Counsel for Respondents:    Warren Greher, Esq.

**XIV.**  **<u>Estimated Time of Trial</u>:**

    One day.

**XV.**  **<u>Trial Date</u>: <u>*February 20, 2009 at 10:00 a.m.*</u>**

**XVI**  **<u>Memorandum of Law</u>:**

    <u>For Debtor</u>:    Memorandum regarding the issues with respect to this Motion was filed with the Motion and again is filed herewith for the Court's convenience.

    <u>For Respondents</u>:    No Memorandum has been e-filed with this Court.

**XVII.**  **<u>Proposed Findings of Fact and Conclusions of Law</u>:**

    **FINDINGS OF FACT:**

A.    <u>For Debtor</u>:

1.    On February 27, 2007, the debtor filed a Petition under Chapter 7 of the United States Bankruptcy Code.

2.    On April 20, 2007, this Court entered an Order converting this case to a case under Chapter 13 of the United States Bankruptcy Code, and the debtor has continued in possession of her property.

3.    The debtor listed STEVE FORD, as an unsecured creditor on Schedule "F" of the debtor's petition in bankruptcy.

4. The debtor included STEVE FORD on the Verification of Creditor Matrix which was filed with the Court on February 27, 2007.

5. A notice of the filing of such petition, signed by the Clerk of the Court, was served upon, among others, FORD. (See this Court's Docket).

6. On March 29, 2008, a 341 Meeting of Creditors was conducted by the Chapter 7 Trustee. The respondents attended that meeting.

7. Prior to the filing of this petition, the debtor suffered a tremendous physical set back due to cancer and has been trying her best to recuperate and reorganize so as to provide for her family. Due to the debtor's physical condition, the debtor is especially sensitive to stress.

8. The debtor's Chapter 13 Section 341 Meeting of Creditors was conducted on May 30, 2007, at which the respondents appeared.

9. At the 341 Meeting of Creditors, the respondents were unusually rude and offensive. At the close of the meeting, the respondents followed the debtor outside and both verbally and physically assaulted the debtor. The respondent, STEVE FORD, physically grabbed the debtor demanding that she talk to him regarding paying back the alleged debt. In an effort to protect the debtor, the debtor's sister, who had attended the hearing with the debtor, was required to attempt to physically separate them. The commotion created was so great that it could be heard in the 341 Meeting room causing the undersigned to rush outside. Upon witnessing the physical and verbal altercation, ANDREA B. MALIN warned the respondents that their behavior was inappropriate and in violation of the bankruptcy law and thus they should leave immediately. ANDREA B. MALIN advised that if they did not discontinue their behavior the police would be summons to the scene. At first, the respondents refused to leave and then advised that they would leave but they would be waiting for the debtor in the parking lot. This threat caused grave concern to ANDREA B. MALIN requiring here to immediately counsel her client and her sister to come back into the 341

Meeting room and go to the United States Marshals and request that they intervene in order to protect the debtor. The United States Marshals walked the debtor to her vehicle to assure her safety.

10. On or about May 24, 2007, STEVE FORD filed a claim in this case on behalf of the respondents.

11. On or about June 29, 2007, the respondents retained counsel to represent their interests in the bankruptcy and filed an Objection to the Confirmation of the debtor's plan.

12. On or about October 16, 2007, the debtor filed opposition to the claim and served same upon the attorney Michael O'Leary, Esq.

13. On or about October 24, 2007, the debtor filed an Objection to the Claim filed by the respondents and served same upon his counsel.

14. The documents provided to MICHAEL O'LEARY, ESQ. included proof that any sums allegedly due and owing to respondents in this claim had in fact been paid in full, together with proof that the debt, if any, was not between the parties, but between the respondents and a corporation in which the debtor was a shareholder.

15. At all times pertinent hereto, Kathie Ford was acting on behalf of, and as an agent for, Stephen Ford.

16. On October 23, 2007, at approximately 7:30 p.m., KATHIE FORD appeared at the debtor's residence attempting to address the debtor in regard to the alleged debt. The debtor's friend answered the door at which time the debtor heard a grave commotion, to wit: screaming and yelling by KATHIE FORD regarding the debtor's failure to pay the debt and making threats against the debtor. Upon rushing to the door, the debtor realized it was KATHIE FORD and the debtor immediately demanded that she leave the property. KATHIE FORD refused to leave the property. At such time KATHIE FORD advised the debtor that she had been to Michael O'Leary's office and was advised that the debtor was not

going to pay the debt allegedly due and owing to FORD. KATHIE FORD made many physical threats prior to finally leaving the property.

17. At this time, the debtor's minor daughter was home and is now afraid to stay alone at the home after school as she believes either KATHIE FORD or FORD will return to the home to make good on their threats. The debtor has been forced to leave work early or make other arrangements to ensure that her daughter is not home alone after school, as she too fears for her physical safety.

18. Immediately after the incident occurred, the debtor contacted the New York State Troopers to report same.

19. Shortly thereafter, the respondents obtained new counsel, WARREN GREHER, ESQ.

20. On February 26, 2008, the respondents' claim was amended by their new counsel.

21. On December 3, 2007, the respondents' new counsel filed opposition to debtor's Objection to Claim Motion.

22. On December 11, 2007, the parties had a hearing before this Court at which time both contested matters (the Objection to Claim and Objection to Confirmation) were consolidated for the purpose of further litigation and evidentiary hearing, as each represented similar issues with the same common nucleus of fact.

23. On December 21, 2007, a Scheduling Order was entered by this Court.

24. On December 31, 2008, the debtor served upon claimant the following:

Request for Production of Documents, Request for Interrogatories

and a Request for Admissions, pursuant to the Federal Rules of Civil and Bankruptcy Procedure. Claimant's response was due on or before January 31, 2008.

25. On February 5, 2008, a Pre-Trial Conference was held during which it was

agreed by the parties that said Pre-Trial Conference would be treated as an informal discovery conference pursuant to S.D.N.Y. Local Rules and that the debtor would file the instant motion.                                    25.

At the hearing, claimant offered no response or justification for the failure to comply with the debtor's discovery requests and did not request further time to respond.

26.     The failure to reply continued and provided the debtor no alternative than to file a Motion to Compel, Preclude and for Fees and Costs against the respondents due to the outright failure to comply with discovery requests.

27.     After the Motion had been filed and the debtor had incurred substantial cost in defending against the Objection to Confirmation and prosecuting the Motion Objecting to Claim, counsel for the respondents withdrew the amended proof of claim and decided to discontinue their efforts with regard to the Objection to Confirmation.  The respondents knew that they were going to withdraw both the amended proof of claim and the Objection to Confirmation long before same was withdrawn while well aware of the fact that the debtor was continuing to prepare to litigate the matters and incur substantial costs doing so.

28.     On April 3, 2008, the respondents filed opposition to the debtor's request for fees and costs and argued that the debtor's Motion was moot and no fees should be awarded, as the respondents had withdrawn the proof of claim and were thus immune from any dilatory action taken by the respondents and any prejudice caused to the debtor by their actions.

29.     On May 16, 2008, after providing to the respondents an opportunity to review and object to the debtor's fees, costs and disbursements request, the Court entered an Order awarding to the debtor her fees and costs.

30.     The respondents engaged in intentional and willful conduct in that they continued to litigate the matters before the Court with knowledge that they were unable to legally prevail in an effort to cause the debtor sever financial and emotional distress in hopes to thwart the debtor's efforts to reorganize and thus provide the respondents with an opportunity to collect upon their debt.

31.  The respondents have failed and refused to recognize the mandate set forth in 11 U.S.C. §362.

32. It is clear from the facts as set forth herein that the respondents have knowingly violated the automatic stay and have wrongfully refused to discontinue such activities.

33.  Prior to the evidentiary hearing had hereon, the debtor has incurred attorneys fees in the sum of $                                          in the prosecution of this motion.

34.  The debtor has incurred additional attorneys fees in the prosecution of this motion before this Court on an Evidentiary Hearing.

35.  The debtor has incurred costs and disbursements in the sum of $ in the prosecution of this motion.

36.  The debtors has incurred additionally attorneys fees in the prosecution of this motion before this Court on an Evidentiary Hearing.

37. Due to the especially egregious and heinous conduct knowingly engaged in by the respondents, the debtor should be awarded punitive damages in a sum to be determined by this Court.  Such an award is justified under the circumstances especially in light of the fact that the respondents continued to engage in this violent behavior without excuse or justification.

**CONCLUSIONS OF LAW:**

**For the Debtor:**

1.  FORD and KATHIE FORD's conduct herein violated the automatic stay of 11 U.S.C. § 362(a)(6), as an act or series of acts to collect, assess or recover a claim against the debtor, notwithstanding that, despite their sworn claims to the contrary, FORD and KATHIE FORD are not the holders of allowable claims against the Debtor.

2.  Notwithstanding FORD'S and KATHIE FORD'S actual knowledge of the filing of

14

the debtor's petition and the existence of the automatic stay, the FORDS willfully violated the stay by their behavior at the 341 Meeting of Creditors and again by going to the debtor's home to seek collection of the alleged debt in violation of the mandate set forth in 11 U.S.C. §362.

3. The FORDS are liable to the debtor due to their violation of the automatic stay set forth in 11 U.S.C. §362(a) pursuant to 11 U.S.C. §362(k).

4. To date, the debtor has incurred fees in the sum of $ and is hereby awarded same.

5. The debtor is hereby directed to file a supplemental request for fees based upon the time spent hereafter in prosecuting this motion before this Court.

6. The debtor is hereby awarded her costs in the sum of $

7. The debtor is hereby directed to file a supplemental request for costs and disbursements based upon those incurred in prosecuting this motion before this Court.

8. The debtor is hereby awarded punitive damages in the sum to be determined by the Court.


**FINDINGS OF FACT:**

   **For the Respondents:**

1. On February 27, 2007, the debtor filed a Petition under Chapter 7 of the United States Bankruptcy Code.

2. The debtor listed the respondent, STEVEN FORD, as an unsecured creditor on Schedule "F" of the debtor's petition in bankruptcy. (See this Court's Docket).

3. The debtor included the respondent on the Verification of Creditor Matrix which was filed with the Court on February 27, 2007.

4. A notice of the filing of such petition, signed by the Clerk of the Court, was served upon, among others, the respondent. (See this Court's Docket).

5. On March 29, 2008, the Chapter 7 Trustee conducted a 341 Examination at which time the respondents appeared to question the debtor.

6. On April 20, 2007, this Court entered an Order converting this case to a case under Chapter 13 of the United States Bankruptcy Code, and the debtor has continued in possession of her property.

7. The debtor's Chapter 13 Section 341 Meeting of Creditors was conducted on May 30, 2007, at which the respondents appeared. The debtor was accompanied by her sister.

8. Kathie Ford engaged in a conversation with the debtor's sister.

9. On October 23, 2007, at approximately 7:30 p.m. the respondent, Kathie Ford appeared at the debtor's residence, knocked on the door and engaged Kathie Ford's brother, William Helgerman, in a discussion.

**CONCLUSIONS OF LAW:**

**For the Respondents:**

1. Kathie Ford was not a creditor of the debtor, and cannot be charged with a violation of 11 U.S.C. §362(a).

2. There was not, in fact, a violation of the automatic stay.

3. If there was a violation of the automatic stay, it was not deliberate and willful.

4. The actions of the respondents did not constitute harassment of the debtor.

**XVIX.  Miscellaneous:**

None.

**XX.     Modification of Order:**     It is further ordered that the Court may, in order to prevent manifest injustice or for good cause shown at the trial of the action or prior thereto upon application of counsel from either party made in good faith or upon motion of the Court modify this pre-trial order upon such conditions as that Court may deem just and proper.

Dated: Poughkeepsie, New York
         January 13, 2009                                    ___/s/ Cecelia Morris_____
                                                             Cecelia G. Morris, U.S. Bankruptcy Judge

**APPROVED AS TO FORM AND SUBSTANCE:**

MICHAEL D. PINSKY, P.C.

/s/ Mike Pinsky_____12/11/2008
By: Mike Pinsky, Esq.

GREHER LAW OFFICES
/s/ Warren Greher_____12/29/2008
By:   Warren Greher,  Esq.