UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-------------------------------------------------------X

In re Anne-Marie Westridge,                           Case No. 07-35257

                Debtor.

-------------------------------------------------------X

MEMORANDUM DECISION AWARDING
ACTUAL AND PUNITIVE DAMAGES
FOR VIOLATION OF THE AUTOMATIC STAY

     Having found on motion of the Debtor that certain creditors violated the automatic stay, the Court considers the amount of damages that are permitted by the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and are appropriate under the circumstances of this matter. The Court held on the record of a hearing on February 19, 2009, that the acts of Steve and Kathie Ford ("the Fords") were willful and egregious. The Court entered an Order on March 4, 2009, granting Debtor's motion for damages for violation of the stay, and incorporating the Court's findings on the record of the hearing on February 19, 2009. The Court held a hearing on damages on September 10, 2009 (the "Damages Hearing"). The Court finds that the willful violation of the automatic stay, in which the Fords acted

in an egregious manner, warrant an award of actual damages of $13,746.76.[1] The Court awards punitive damages of $13,746.76, as such number is proportionate to the actual damages and is appropriate in consideration of due process, the Fords' ability to pay, and the need to deter the conduct that was exhibited by the Fords.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. Sections 1334(a) and 157(a) and the standing Order of Reference to bankruptcy judges dated July 10, 1984, signed by acting Chief Judge Robert J. Ward. This is a core proceeding under 28 U.S.C. Section 157(b)(2). The following opinion constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rules 9014 and 7052.

## BACKGROUND FACTS

The Court incorporates its findings from the hearing held on February 19, 2009, which were incorporated into the Order dated March 4, 2009.

## ISSUE

The parties have stipulated to the amount of attorney fees to be awarded in favor of Debtor. The Court must decide the appropriate amount of punitive damages to award against the Fords pursuant to Bankruptcy Code § 362(k).

---

[1] In a separate Order dated October 23, 2009, counsel fees and costs associated with this contested matter are awarded.

# RULES AND LEGAL STANDARDS:
# DAMAGES FOR WILLFUL VIOLATION OF THE STAY

Bankruptcy Code § 362(a)(6) provides that, generally, a petition filed under Bankruptcy Code § 301 operates as a stay, applicable to all entities, of any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy case. Bankruptcy Code § 362(k) provides that, with an exception that is not relevant here, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[2]

Since the Court has already found that there is a willful violation of the stay, the award of actual damages is mandatory under Bankruptcy Code § 362(k)(1).

At the Damages Hearing, counsel to Debtor advised the Court that the parties had reached a stipulation with respect to counsel fees. Docket No. 110, Transcript of Hearing held September 10, 2009, p. 3, ll. 18-20 (hereafter, "Tr.").

Next, the Court moves to the question of punitive damages. An award of actual damages to an individual is mandated where the stay violation is willful, and

---

[2] Bankruptcy Code § 362(k)(2) provides that damages shall be limited to actual damages, where the violator has a good faith belief that it is not violating the stay with regard to the debtor's failure to act on the reaffirmation or redemption of a debt.

the bankruptcy court has discretion to assess punitive damages. Bankruptcy Code § 362(k). *In re Crawford*, 388 B.R. 506 (Bankr. S.D. N.Y. 2008).

Where a party has willfully violated the automatic stay, "[a]n additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990). *See also In re Adomah*, 368, B.R. 134, 139 (S.D.N.Y. 2007).

In determining an award of punitive damages, the Court is guided by the factors set out in *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 487 (E.D. Pa. 1989): (1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the defendant's motives; and (4) any provocation by the debtor. As a fifth factor, some courts have considered the defendant's level of sophistication. *See In re Gagliardi*, 290 B.R. 808, 813 (Bankr. D. Colo. 2003) (citing *In re Diviney,* 225 B.R. 762, 776 (10th Cir. BAP 1998)).

"Punitive damages are proper as a deterrent to those entities who willfully violate the automatic stay provisions, even if actual damages are minimal." *In re Lile,* 103 B.R. 830, 841 (Bankr. S.D. Tex. 1989) (imposing punitive damages of $100,000 against IRS to deter willful violations in future; debtor's actual damages totaled $450).

> In determining the appropriate amount of punitive damages, the Court must consider the nature of the Respondents' conduct, the ability to

pay, and the amount of actual damages awarded. The amount of punitive damages should be sufficient to deter the Respondents, and similarly situated parties in the future, from unilaterally determining the scope and effect of the automatic stay.

*In re Gagliardi*, *supra*, 290 B.R. at 822 ($10,000 punitive sanction against mortgage holder and attorneys). The bankruptcy court in *In re GGSI Liquidation Inc.*, 355 B.R. 691, 703 (Bankr. N.D. Ill. 2006), awarded punitive damages of $100,000 against a bank and the entity it collaborated with in violating the stay, where their conduct exhibited "callous indifference to bankruptcy law" and where the award would "deter parties in other cases who are tempted to play the same game."

The Court is guided by *In re Mitchell*, 2009 Bankr. LEXIS 195 (Bankr. S.D. Ind. February 6, 2009). In *Mitchell*, the creditor was served with notice of the bankruptcy, and contacted the debtor at least once after the filing; conflicting testimony was presented that many more contacts were made. The court noted the rule that "punitive damages should only be awarded with respect to conduct which is tantamount to 'thumbing one's nose at' the law, the debtor and the court," and considered the five factors set forth above, and assessed an award of $1,000 in actual damages representing attorneys fees and $1,000 in punitive damages.[3] The court noted that the creditor had received the notice of the 341 meeting and that the debtor had repeatedly told the creditor to not contact him and to contact his

---

[3] The *Mitchell* court also considered the nature and extent of harm to the debtor.

attorney instead. The court found these circumstances constituted the creditor's "thumbing his nose" at the court and the debtor. The court noted that the creditor has a "respectable" level of sophistication because he had the means to lend Debtor $154,000, and the ability to pay a minimal award of punitive damages.

Pursuant to the factors from *In re B. Cohen & Sons Caterers, Inc.*, punitive damages in this case are appropriate against the Fords. As the Court has found, Steven's grabbing Debtor outside the 341 meeting, Kathie's verbal assault outside the 341 meeting, and Kathie's subsequent visit to Debtor's home all constituted intentional and deliberate violations of the stay. The Fords had full knowledge of the bankruptcy as evidenced by the facts that the Fords received notice of the bankruptcy filing from the Court and appeared at at least two meetings of creditors. Further, the first stay violation occurred outside the building for the 341 meeting, and Ms. Ford's visit to Debtor's home occurred on the day she learned from her bankruptcy counsel about the status of her claim.

In the Court's view, punitive damages are necessary against the Fords to deter such conduct in the future. In particular the Court is disturbed by the physical assault outside of the 341 meeting and Ms. Ford's visit to the home of Ms. Westridge. The Court has found that the totality of the Fords' conduct is coercive and harassing behavior which was calculated to intimidate the debtor to repay the

debt.  Creditors are not free to confront debtors using coercive and intimidating conduct to insist on payment of their debt.

No evidence has been presented showing that there was provocation on the part of Ms. Westridge.

At the Damages Hearing, the Court heard much evidence showing that the Fords are financially sophisticated and have the ability to pay punitive damages.  In particular, the Fords' financial circumstances include:

● Payments received pursuant to a note with regard to a home they sold to William Grace, Jr. about two years ago.  Tr. at 17-19, ll. 14-6; 23, ll. 2-9; 24-25, ll. 12-7.  The Court notes that the bank that held a secured debt against the home converted it to an unsecured debt.  Tr. at 34, ll. 17-23.  As a result, the Ford's mortgage is the only lien on this property.  *See* Tr. at 34-35, ll. 17-6.

● The Fords' home, which they bought about two years ago. Tr. at 18, ll. 1-6;

● Steven's half-interest in a duplex; the other half-interest is held by Steven's mother.  The property generates rental income.  Tr. at 26-27, ll. 24-9;

● Steven's partnership interest in Dean Ford and Sons Dairy Farms (the "Dairy"), 30 percent of profit and loss.  Tr. at 27-28, ll. 15-2; 40, ll. 15-20; 57, ll. 13-17.  The Court notes that Steven receives about $500 per month in cash from the partnership, and that this amount is received after his living expenses are paid

by the Dairy, including payment to an individual retirement account. The extra disbursements are reported on tax returns. Tr. at 28, ll. 6-25; and

    ● Steven's partnership interest in Farmstead Land Development Corp.. 25 percent. Tr. at 48, ll. 3-5.

The Court finds that the Fords' ownership of three units of real property and participation in two family businesses to be powerful evidence of financial sophistication. The Court notes that the Fords had the means to make two substantial loans to the Debtor, which is further evidence of financial sophistication pursuant to *Mitchell*.

The Court finds that the Fords have the ability to pay punitive damages because Steven earned comfortable income from the Dairy, including the payment of personal expenses and funding of an individual retirement account. Further, the duplex and Grace property are income-producing properties.

Plaintiff argues that a single-digit ratio of punitive damages to actual damages is consistent with other, similar punitive damage awards for willful violation of the automatic stay. *See, e.g., Diviney v. NationsBank, N.A. (In re Diviney)*, 225 B.R. 762, 774 (10th Cir. BAP 1998) ($40,000 punitives versus $2,850 in actual damages and $15,000 in attorney's fees).

The Court notes that in New York, bankruptcy courts often assess awards of punitive damages that are reasonably proportionate to the actual damages. *See In*

*re Lukach*, 2007 Bankr. LEXIS 1631 (Bankr. E.D.N.Y. May 8, 2007) (court awarded legal fees of $3,700 and punitive damages of $5,000); *In re Chavez*, 381 B.R. 582 (Bankr. E.D.N.Y. 2008) (In landlord-tenant matter, court awarded creditor-tenant $6,500 in compensatory damages and $4,000 in punitive damages, pursuant to principles of landlord-tenant law); *In re Seniecle*, 2009 Bankr. LEXIS 2678 (Bankr. N.D.N.Y. April 20, 2009) (where bank sent post-petition collection notices, court awarded $12,410 in attorney fees and $3,500 in punitive damages).

The Court finds that an award of $13,746.76 in punitive damages to be appropriate in this case. The record has established that the Fords exhibited extreme and outrageous conduct in violation of the stay, by shouting obscenities and grabbing Debtor after the meeting of creditors, and later visiting Debtor's house to push the matter of Debtor's not paying back the debt. The evidence at the Damages Hearing showed the Fords are financially sophisticated and are able to pay punitive damages as a result of their income from the Dairy and dealings in real estate. An award of punitive damages is necessary to deter future conduct, by both the Fords and any other creditor who, angered by the institution

of bankruptcy, feels compelled to disregard federal bankruptcy law and its heart, the phenomenon of the automatic stay.

Counsel to Debtor shall submit an order consistent with this opinion.

Dated:   Poughkeepsie, New York
         October 23, 2009

/s/ Cecelia Morris
The Hon. Cecelia G. Morris
U.S. Bankruptcy Judge